UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

REBECCA L. B.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**DECISION AND ORDER**

1:20-cv-0425 (JJM)

---

        This is an action brought pursuant to 42 U.S.C. §405(g) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to social security disability ("SSD") benefits. Before the court are the parties' cross-motions for judgment on the pleadings [16, 18].[2] The parties have consented to my jurisdiction [20]. Having reviewed their submissions [16, 18, 19], this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

### BACKGROUND

        The parties' familiarity with the 993-page administrative record ([11]) is presumed. Further, the parties have comprehensively set forth in their papers the plaintiff's

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only the first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination (upper right corner of the page).

treatment history and the relevant medical evidence. Accordingly, I reference below only those facts necessary to explain my decision.

Plaintiff filed for benefits in July 2016, when she was 33 years old, alleging a disability beginning on February 19, 2016, due to: mental health disorder; an acoustic neuroma tumor in her brain; severe migraines and nerve damage; dizzy spells with falls and balance issues; central nervous system issues; herniated discs in her neck; damage to her right extremities, neck, and arm; an adrenal gland tumor; and right ear deafness. Administrative Record [11], pp. 143, 169.

Plaintiff's claim was initially denied. Id., p. 86. An administrative hearing was held on September 13. 2018 before Administrative Law Judge ("ALJ") Arthur Patane. Id., pp. 37-57 (transcript of hearing). Plaintiff, who was represented by an attorney, testified. Id., pp. 40-56. On January 18, 2019, ALJ Patane issued a decision finding that plaintiff was not disabled. Id., pp. 15-31. In reaching that determination, ALJ Patane found that plaintiff's severe impairments were degenerative disc disease of the cervical and lumbar spine, right shoulder strain, migraines and benign brain tumor, positional vertigo, depressive disorder, anxiety disorders, binge-eating disorder, and post-traumatic stress disorder ("PTSD"). Id., p. 17.[3]

ALJ Patane ultimately concluded that plaintiff was not disabled pursuant to the Social Security Act from February 19, 2016 through the date of his decision. Id., p. 31. He found the plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR §404.1567(b), with the following additional limitations:

> "[S]he can lift and carry up to 20 pounds occasionally and 10 pounds frequently; can sit for six hours total with normal breaks

---

[3] ALJ Patane found that plaintiff's sinusitis with septoplasty, right carpal tunnel syndrome, and hearing impairment were not severe impairments. Id., p. 18. Further, although ALJ Patane discussed plaintiff's obesity elsewhere in the decision, he did not discuss it at this step, nor did he find it to be a severe impairment. See id. The plaintiff does not challenge these findings.

> during an eight-hour workday; can stand and walk for six hours
> total with normal breaks in an eight-hour workday; can never
> climb ladders, ropes, or scaffolds but otherwise can frequently
> balance, stoop, kneel, crouch, crawl, and traverse ramps and stairs;
> can tolerate occasional exposure to unprotected heights and
> moving mechanical parts; can frequently operate a motor vehicle;
> and can understand, remember, execute, and respond appropriately
> to stress and changes associated with simple and detailed but not
> complex work tasks."

Id., p. 21. ALJ Patane relied upon the Medical-Vocational Guidelines (the "Grids") to determine that with plaintiff's RFC, "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform" and that she was not, therefore, disabled pursuant to the Social Security Act. Id., pp. 30-31. No vocational expert testified at the hearing.

Plaintiff does not challenge the limitations included in the RFC. Rather, plaintiff argues that ALJ Patane failed to include in the RFC additional limitations related to overhead reaching and noise tolerance that could significantly impact her vocational base. Plaintiff's Memorandum [16-1], pp. 18-21. She argues that ALJ Patane's rejection of these limitations was based on his lay interpretation of the medical evidence and not supported by substantial evidence. Id., pp. 20-21. Plaintiff further argues that, with respect to the overhead reaching limitation, ALJ Patane mischaracterized evidence in her treating records to support his conclusion. Id., p. 19.

Because I agree that ALJ Patane's analysis concerning the overhead reaching limitation was not supported by substantial evidence, I remand this matter for further proceedings consistent with my analysis, below.

## ANALYSIS

**A.      Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.      Was ALJ Patane's Determination Concerning an Overhead Reaching Limitation Supported by Substantial Evidence?**

To craft the RFC, ALJ Patane considered the only two functional assessments in the record: Dr. Hongbiao Liu's September 27, 2016 report of his consultative internal medicine examination of the plaintiff; and Dr. Steven S. Goldstein's Medical Interrogatory Physical Impairment(s) – Adults, completed after his review of plaintiff's medical records, along with the accompanying Medical Source Statement of Ability to do Work-Related Activities (Physical).

Dr. Liu took a medical and social history, including a recitation of plaintiff's activities of daily living. Upon examination, as relevant here, Dr. Liu observed a restriction of the range of motion of plaintiff's right shoulder. He measured forward elevation and abduction at

140 degrees, adduction to 20 degrees and internal rotation to 30 degrees.[4]  Administrative Record [11], p. 504.   Dr. Liu also measured restricted range of motion in plaintiff's cervical spine, with flexion and extension to 40 degrees, lateral flexion to 40 degrees bilaterally, and rotation to 70 degrees bilaterally.[5]  Dr. Liu diagnosed the plaintiff with, *inter alia*, chronic neck pain.  He opined that plaintiff had a "mild to moderate limitation for prolonged walking, bending, kneeling, and overhead reaching".  Id., p. 505.

After his review of plaintiff's medical records, and citing to both an MRI report and records of plaintiff's treating pain management specialist, Dr. Goldstein found that plaintiff's impairments included, *inter alia*, degenerative disc disease of cervical spine, hearing loss, and migraines.  Id., p. 971.  In his accompanying Medical Source Statement, Dr. Goldstein found that claimant could reach overhead only occasionally (defined as up to 1/3 of the time).  Id., p. 966.  In addition, he stated that plaintiff could tolerate only moderate noise (*i.e.* as in an office).  Id., p. 968.

It is well settled that the RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision" and an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole".  Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order). *See also* Young v. Berryhill, 2018 WL 2752443, *2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not

---

[4]  "Normal forward flexion of the shoulder is 180 degrees, normal extension is 50 degrees, normal abduction is 180 degrees, normal adduction is 50 degrees".  Nunez v. Berryhill, 2017 WL 3495213, *3, n. 22 (W.D.N.Y.  2017) (*citing* Stacie J. Fruth, Fundamentals of the Physical Therapy Examination: Patient Interviews and Tests & Measures, 263 (2d ed. 2018)).

[5]  "Normal measurement for cervical flexion (moving the head forward) is 50 degrees, extension (moving the head backward) is 60 degrees, and lateral rotation (turning to the side) is 80 degrees".  Johnson v. Commissioner, 2018 WL 3650162. *4, n. 4 (W.D.N.Y. 2018) (*citing* Livestrong, *Normal Human Ranges of Motion*, https://www.livestrong.com/article/257162-normal-human-range-of-motion).

adopt one or more medical opinions verbatim in order to render a sufficiently-supported RFC determination"). "The question is, instead, whether the ALJ's conclusion was 'supported by the record as a whole.'" Nieves v. Commissioner of Social Security, 2019 WL 4565112, *4 (S.D.N.Y. 2019) (*quoting* Tricarico v. Colvin, 681 Fed. Appx. 98, 101 (2d Cir. 2017) (Summary Order)).

"It is well-recognized that the ALJ need not adopt any opinion in its entirety, but rather is entitled to weigh all the evidence and adopt the limitations supported by the evidence". Butler v. Commissioner of Social Security, 2017 WL 2834482, *8 (N.D.N.Y. 2017). When an ALJ rejects an opinion from a medical source concerning plaintiff's functional abilities, he or she must explain why the opinion was not adopted. *See* Dioguardi v. Commissioner of Social Security, 445 F.Supp.2d 288, 297 (W.D.N.Y. 2006) ("[u]nder the Commissioner's own rules, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.' Soc. Sec. Ruling 96-8p (1996)"). An ALJ's decision is supported by substantial evidence where it "rests on adequate findings supported by evidence having rational probative force". Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

Reaching is a non-exertional impairment. 20 C.F.R. § 404.1569a(c)(1)(vi) ("[s]ome examples of nonexertional limitations or restrictions include . . . difficulty performing the manipulative or postural functions of some work such as reaching"). The Social Security Administration has recognized that limitations in overhead reaching can significantly affect the number of occupations available to an individual:

> "*Reaching, handling, fingering, and feeling* require progressively finer usage of the upper extremities to perform work-related activities. Reaching (extending the hands and arms in any direction and handling (seizing, holding, grasping, turning, or otherwise working primarily with the whole had or hands) are activities required in almost all jobs. Significant limitation of

> reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a [vocational specialist] may be needed to determine the effects of the limitations."

SSR 85-15, 1985 WL 56857, *7 (Titles II and XVI: Capability to do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairment) (1985); *see also* Martinez v. Commissioner, 2017 WL 2633532, *3 (N.D.N.Y. 2017) ("[r]eaching is required in almost all jobs and a reaching limitation may eliminate a large number of occupations a person could otherwise do"). "[A]n ALJ cannot rely on the Grids if a non-exertional impairment has any more than a "negligible" impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert". Sesa v. Colvin, 629 Fed. Appx. 30, 32 (2d Cir. 2015 )(Summary Order) (*citing* Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013)). Here, both of the functional assessments in the record included a limitation on overhead reaching. Although ALJ Patane was not required to accept Dr. Liu's and Dr. Goldstein's opinions concerning overhead reaching, he *was* required to support his determination with substantial evidence, that is, a "sufficient explanation" resting on "adequate findings supported by evidence having rational probative force". Veino, 312 F.3d at 586.

I find that ALJ Patane's explanation for rejecting the overhead reaching limitation found in both Dr. Liu's and Dr. Goldstein's functional assessments was insufficient and inadequate. In his analysis of plaintiff's RFC, ALJ Patane noted that plaintiff's treating pain management specialist, Andrew Matteliano, M.D., consistently recorded in his treatment notes "pain with range of motion of the shoulder", including "shoulder abduction to 120 degrees". Id., p. 23. ALJ Patane also noted that, although plaintiff's complaints of shoulder and neck pain "date to 2008 following a work injury", "[t]here is no objective evidence with which to find any

specific right shoulder abnormality, as the only MRI of the shoulder was in July 2008 and was 'unremarkable'. Instead, her treatment notes consistently referenced a 'sprain' and it appears her complaints regarding the shoulder were secondary to neck impairment". Id., p. 22.

ALJ Patane found that Dr. Liu's restrictions in bending and kneeling were "reasonable". Id., p. 25. However, he found there was not "sufficient objective support for more than minimal limitations in the ability to reach". Id. ALJ Patane noted that, upon examination by Dr. Liu, plaintiff had "full strength in all four extremities, including grip strength and hand and finger dexterity . . . [and] retained near-full cervical spine . . . and right shoulder ranges of motion". Id., pp. 24-25. It is unclear to me how full strength, full grip strength, and intact hand and finger dexterity is inconsistent with an overhead reaching restriction, and ALJ Patane does not elaborate. He noted that plaintiff "never received specialized treatment for her shoulder or even her neck, and longitudinal clinical testing by physiatrists, neurologist, and general practitioners established consistent ability to lift the non-dominant right arm above shoulder level without weakness". Id. However, notwithstanding a possible lack of treatment, ALJ Patane noted in his opinion that plaintiff's cervical MRIs "showed multilevel disc desiccation with some central stenosis" and disc herniations at multiple levels. Id., p. 22. He also found that degenerative disc disease of the cervical spine and right shoulder strain were severe impairments. Id., p. 17. Neither Dr. Liu nor Dr. Goldstein diagnosed plaintiff with a shoulder condition suggesting that the limitations they assessed were related to their respective diagnoses of "chronic neck . . . pain" and degenerative disc disease of the cervical spine. Id., pp. 504-05, 971. ALJ Patane also acknowledged that plaintiff's shoulder complaints "were secondary to [her] neck impairment". Id., p. 22.

Given these circumstances, I find that lack of treatment to the shoulder is not substantial evidence to reject the overhead reaching limitations. Nor is plaintiff's ability to lift her arm "above shoulder level". The measurements of shoulder range of motion in Dr. Matteliano's records, and those observed and measured by Dr. Liu, indicated a range of motion that permitted movement above shoulder level. However, plaintiff did not have full range of motion of her shoulder which, coupled with plaintiff's cervical degeneration and disc herniations, was the apparent basis of the restrictions imposed by both Drs. Liu and Goldstein. ALJ Patane does not cite to any regulation, case, or medical opinion to support his assumption that plaintiff's ability to lift her arm above shoulder level, but not through the normal range of motion, demonstrated that no overhead reaching limitation was necessary or appropriate.

ALJ Patane also observed that Dr. Liu's notes concerning plaintiff's activities of daily living "suggest less functional restriction than to which the [plaintiff] testified" because she reported to Dr. Liu that she "cooked two or three times per week, cleaned the house, did laundry, shopped one to three times per week, showered or bathed five times per week, dressed every day, and spent her time watching television, listening to the radio, reading books, and socializing with friends". Id., p. 24. As with ALJ Patane's observations concerning strength in her right extremity, it is unclear to me how these activities demonstrate an ability to reach overhead in excess of the restrictions imposed by Drs. Liu and Goldstein.

ALJ Patane noted that plaintiff "has consistently had near-full ranges of motion in the neck and shoulders without deficits in strength and notably without evidence of atrophy to show disuse". Id., p. 26. However, I agree with plaintiff that "near-full" appears to mischaracterize the record. See Plaintiff's Memorandum [16-4], pp. 19-20. Dr. Matteliano's notes consistently state that plaintiff can abduct to "about 120 degrees with quite a bit of shoulder stiffness" (*see*

e.g. administrative record [11], p. 510), where 180 degrees is normal. *See* note 4, supra. Dr. Goldstein specifically cited Dr. Matteliano's records in support of his opinion. *See* Administrative Record [11], p. 971 (reference to Exhibit 16F). Further, Dr. Liu recorded a similar restricted range of motion in the right shoulder, noting forward elevation to 140 degrees and abduction to 140 degrees. Here, both Drs. Liu and Goldstein apparently felt the plaintiff's range of motion was sufficiently restricted to warrant a limitation to overhead reaching in their functional assessment. Given this medical evidence, ALJ Patane's characterization of plaintiff's limited shoulder range of motion as "near-full" was not supported by substantial evidence. ALJ Patane further supported his conclusion by noting that "claimant has not been referred for a surgical consultation for her neck, [or] shoulder" and "clinical notes otherwise indicate intact strength, grip, and dexterity in the bilateral hands". Id. Again, ALJ Patane did not indicate how or why the lack of a surgical consultation, and intact strength, grip, and dexterity are contrary to an overhead lifting restriction. Because ALJ Patane's determination concerning plaintiff's possible reaching limitations was not supported by substantial evidence, I am unable to determine whether his reliance upon the Grids was appropriate. *See* Sesa, supra.

Accordingly, I remand this matter for a proper analysis of the overhead reaching restriction assessed by Drs. Liu and Goldstein, and for further development of the record with the testimony of a vocational expert, if necessary. Because remand is necessary, I do not reach plaintiff's remaining arguments concerning the overhead reaching limitation. *See* Stack v. Commissioner, 2020 WL 5494494, *6 (W.D.N.Y. 2020).

**C.    Was ALJ Patane's Determination Concerning a Noise Limitation Supported by Substantial Evidence?**

The Social Security Administration has elaborated that the primary consideration when assessing the effect of a hearing impairment is the plaintiff's ability to communicate:

> "Communication is an important factor in work. The inability to
> hear, because it vitally affects communication, is thus of great
> importance. However, hearing impairments do not necessarily
> prevent communication, and differences in types of work may be
> compatible with various degrees of hearing loss."

SSR 85-15, 1985 WL 56957, *7. With respect to his rejection of Dr. Goldstein's limitation to only moderate noise, ALJ Patane specifically addressed this primary consideration. He explained that plaintiff "retains full hearing in the left ear and, despite sensorineural hearing loss in the right, has no objective evidence of barriers in communication or the ability to hear and understand the speech of others or be aware of her surroundings". Administrative Record [11], p. 26. At step 2 of his analysis, ALJ Patane noted that Dr. Goldstein "did not opine any significant functional loss" and, in addition, that plaintiff "was able to hear and understand simple oral instructions, communicate simple information, and use a telephone to communicate". Id., p. 18. He also noted that Dr. Goldstein's opinion was "consistent with the [plaintiff's] own reports of work activity from home during the period at issue, which was conducted over the phone". Id. Finally, he noted that plaintiff "has not alleged that migraines are triggered by such factors and she has had no significant treatment for her hearing". Id.

I find that ALJ Patane cited "adequate findings supported by evidence having rational probative force" to support his rejection of a noise limitation. Accordingly, his determination rests on substantial evidence. Veino, 312 F.3d at 586. It is well-settled that an ALJ "is entitled to rely not only on what the record says, but also on what it does not say". Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [16] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied. Accordingly, the Commissioner's motion for judgment on the pleadings [18] is denied.

**SO ORDERED**.

Dated: June 22, 2021

/s/   Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge